520 P.2d 361 (1974)
Michealeen LIBBEE, Personal Representative of the Estate of Brian Libbee, Appellant,
v.
PERMANENTE CLINIC, Partnership, et al., Respondents.
Supreme Court of Oregon, In Banc.
Petition for Rehearing February 20, 1974.
Decided March 21, 1974.
*362 William L. Hallmark, Robert P. Jones, and McMenamin, Jones, Joseph & Lang, Portland, for the petition.
Theodore S. Bloom and Martindale, Ruben & Rothman, Portland, contra.
Upon Respondents' Petition for Rehearing February 20, 1974.
TONGUE, Justice.
Defendants have filed a petition for rehearing in which they contend that we erred "in holding that there was evidence from which the jury could find the hospital negligently caused the death of plaintiff's decedent."
Defendants contend that although the motive of the nurse in falsifying the hospital records to show that she monitored the heartbeat every one-half hour "may have been as suggested by the majority [i.e., that she knew that it was customary nursing practice to monitor every half-hour]," other inferences were also possible, such as (1) that she knew this not to be a "medical standard," but "simply as a personnel rule," or (2) that she wanted to cover up for a doctor, or (3) that the "gap in the medical records didn't look right."
In considering this question we must remember that in addition to the fact that the nurse made an entry in the hospital records showing that the fetal heartbeat was checked during the interval of over one hour, contrary to plaintiff's testimony that no such check was made, there was also the following additional testimony:
(1) There was medical testimony that under the circumstances presented by Mrs. Libbee's pregnancy it would have been customary medical practice to monitor the fetal heartbeat at least every half-hour and some witnesses testified that under these circumstances the fetal heartbeat should have been monitored every five minutes.
(2) The hospital records showed a pattern of checking the fetal heartbeat of this child approximately every half-hour prior to the period of over one hour during which, according to plaintiff, no such check was made.
*363 (3) This nurse was a trained and experienced obstetrical nurse.
(4) The nurse admitted that she was aware of the fact that the amniotic fluid was "stained" when the membrane was ruptured and that this could "be a problem for the baby."
(5) The nurse also admitted that it was "common practice in Kaiser Hospital for an LPN [Licensed Practical Nurse] to monitor the heart tones of the patient `quite frequently.'"
Considering this evidence, together with the evidence that the nurse made an entry in the hospital record from which it was made to appear that she continued her previous practice of checking the fetal heartbeat of the child every one-half hour during the interval of over one hour, despite plaintiff's testimony that no such check was made during that interval, the jury could have properly found, in our opinion, that the nurse made that entry because she realized that good nursing practice by a trained obstetrical nurse required the monitor of fetal heart of such a child at least every half-hour under circumstances presented by Mrs. Libbee's pregnancy, particularly when this trained obstetrical nurse not only admitted knowing that the nursing practice at that hospital was that fetal heartbeats should be monitored "quite frequently," but also knew that there was a "problem" for this particular baby, and that this was the most likely explanation for the conduct of this trained and experienced obstetrical nurse.
To suggest that it was just as likely that such a nurse would falsify a record to "cover up for a doctor," or to "fill a gap" in the record, or because of a "personnel rule" is simply not realistic, in our opinion. In other words, the existence of those other possible inferences does not provide a defense in this case any more than the possible inferences which were rejected by this court in Cowgill, Adm'r v. Boock, Adm'r, 189 Or. 282, 292, 218 P.2d 445 (1950).
Defendants also contend, on the issue of causation, that "the cause of death was medical mismanagement of the doctors in failing to perform a Caesarean" some three hours earlier. At the time of trial, however, the doctors contended that they were not negligent in not taking the child sooner and the jury apparently agreed by its verdict in favor of the doctors.
Defendants' petition also refers to testimony by the doctors that "the odds of the baby being born alive at the end of a 40-minute delay were incredibly low" and that "10 minutes was the outside limit on the ability of the child to survive without oxygen," with the result that "it would be speculative to conclude that the child's life would have been saved." That testimony, however, did not go directly to the question of how long the baby would have survived if the heartbeat had been properly monitored and if proper steps had been taken promptly after the fetal heartbeat stopped.
The question to be decided in this case on the issue of causation is whether, assuming that it was proper to allow the mother's labor to continue for a natural childbirth, subject to monitoring by the nurse, the jury could properly find that the failure to monitor the child for a period of more than one hour, and after the mother had felt a sudden pain and called for a nurse, was a "substantial factor" in causing the death of a child that was described by some testimony as a "beautiful, perfect, normal baby."
It may be that the failure to monitor this baby during that period of over one hour was not the sole cause of its death. It is our opinion, however, that this was a question of fact for the jury and that under the record in this case the jury could properly find that this was a "substantial factor" in bringing about the death of this child. Cf. Babler Bros. v. Pac. Intermountain, 244 Or. 459, 464, 415 P.2d 735 (1966).
Defendants' petition also requests that we expressly state that the judgment of the trial court in favor of all defendants other *364 than defendant hospital is affirmed. We so hold. The only errors assigned on appeal related to the negligence of defendant hospital.[1]
Defendants next ask that to avoid possible misunderstanding whether the measure of damages in this case, as an action for wrongful death, is controlled by ORS 30.020 prior to amendment by Oregon Laws 1973, ch. 718, we set forth the provision of Section 7 of that Act. That section provides as follows:
"This Act takes effect January 1, 1974, and applies to decedents dying on or after January 1, 1974."
The petition for rehearing is denied.
NOTES
[1] Defendants also call our attention to an inadvertent error in footnote 1 of our opinion. In the preparation of the final draft we overlooked a correction of that footnote to read:

"The jury returned a verdict in favor of the defendant doctors and clinic," in accordance with our understanding at that time of the record of this case.