Argued and submitted June 26, resubmitted In Banc November 8, 1989, affirmed January 25, Clowes's reconsideration, Hager's reconsideration and Kinsey's reconsideration denied March 14, all petitions for review allowed April 26, 1990 (309 Or 698)

STATE OF OREGON,
*Respondent,*

*v.*

BRIAN WOODBRIDGE CLOWES,
*Appellant.*

(DA 372447-8806; CA A50128 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

JUDY LOIS HAGER,
*Appellant.*

(DA 372448-8806; CA A50129)

STATE OF OREGON,
*Respondent,*

*v.*

MICHAEL JAMES KINSEY,
*Appellant.*

(DA 372450-8806; CA A50132)

STATE OF OREGON,
*Respondent,*

*v.*

RACHEL A. WOLCOTT,
*Appellant.*

(DA 372446-8806; CA A50136)
(Cases Consolidated)

785 P2d 1071

Norman L. Lindstedt, Portland, argued the cause for appellants Judy Lois Hager and Rachel A. Wolcott. With him on the brief was Lindstedt & Buono, P.C., Portland.

William E. McCann, Tillamook, argued the cause and filed the brief for appellant Michael James Kinsey.

Richard L. Stradley, Hillsboro, argued the cause and filed the brief for appellant Brian Woodbridge Clowes.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

BUTTLER, J.

Graber, J., specially concurring.

Rossman, J., specially concurring.

## BUTTLER, J.

Defendants were charged with criminal trespass in the second degree, ORS 164.245, for blocking the doors of the Lovejoy Surgicenter with the objective of preventing women from entering for the purpose of obtaining abortions. At their trials, defendants sought to assert the choice of evils defense, ORS 161.200, arguing that the trespass was an emergency measure that was necessary to avoid the imminent deaths of unborn children.[1] The trial court granted the state's pretrial motion to exclude evidence of the defense on the ground that to allow its assertion would be inconsistent with federal law, specifically *Roe v. Wade,* 410 US 113, 93 S Ct 705, 35 L Ed 2d 147 (1973). Defendants appeal after their convictions, assigning error to the court's granting of the state's motion.

Defendants' first two arguments relate to the propriety of a pretrial exclusionary ruling in these circumstances. Defendants' arguments were rejected in *State v. Whisman,* 33 Or App 147, 151, 575 P2d 1005 (1978), in which we concluded:

"The intent of the legislature in enacting ORS 161.200 was to 'leave it to the trial judge to deal with the matter as he would any other offered evidence.' *See* Commentary, Proposed Oregon Criminal Code 20, § 20 (1970). *See also,* Minutes, Criminal Law Revision Commission, November 7, 1969, pp 25-30."

We went on to say that "the trial judge must determine in the first instance whether defendant's evidence relating to the defense of justification is relevant, material, competent and admissible." 33 Or App at 151. That is what the trial court did here and, in doing so, it acted within the range of its discretion.

In their remaining assignments, defendants argue that the court erred as a matter of law in excluding evidence in support of their choice of evils defense, ORS 161.200, thereby precluding their arguing their only defense to the jury. The trial court found that defendants had tendered sufficient evidence on all of the elements of the defense, generally, to submit it to the jury but concluded that to submit it would be

---

[1] Although defendants were charged and tried separately, the trial court, as a matter of judicial economy, allowed all of them to join in the legal and factual assertions of other defendants in the pretrial proceedings. In this court, the cases of the named defendants are consolidated for argument and decision.

inconsistent with *Roe v. Wade, supra.* Although it is not entirely clear, it appears that the court concluded that allowing defendants to present the defense would constitute state action, *see, e.g., New York Times Co. v. Sullivan,* 376 US 254, 264, 84 S Ct 710, 11 L Ed 2d 686 (1964); *Shelley v. Kraemer,* 334 US 1, 68 S Ct 836, 92 L Ed 1161 (1948), by which the state would be sanctioning defendants' interference with the women's federal constitutional rights.

The trial court, on this record, was correct in holding that the women with whom defendants interfered had a federal constitutional right to be free of interference from the state in seeking an abortion.[2] In *Roe v. Wade, supra,* the Court held that, through the first trimester of pregnancy, the right to an abortion is absolute. In the second trimester, a state may choose to regulate abortion procedures in ways that are reasonably related to maternal health. In the final trimester, the state may regulate abortion for the preservation of the life of the fetus. Defendants offered no evidence at the pretrial hearing that any of the women that they prevented from entering the clinic did not fall within the protection of *Roe v. Wade, supra,* or that they made any attempt to distinguish among them. Rather, their evidence was that life begins at the time of conception and that, therefore, none of the women had a right to abort their fetuses.

Because we conclude that there are independent state grounds on which to base our decision, we need not decide whether allowing the choice of evils defenses here would constitute state action, thereby running afoul of *Roe v. Wade, supra.*

ORS 161.200 provides:

"(1)  Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a)  That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

---

[2] *Webster v. Reproduction Health Services, et al,* ____ US ____, 109 S Ct 3040, 106 L Ed 2d 410 (1989), was decided after these cases were submitted. There is nothing in that decision that would affect this case.

"(b)   The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

"(2)   The necessity and justifiability of conduct under subsection (1) of this section shall not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class arising thereunder."

Before considering subsections (a) and (b) of section (1), which set forth the elements of the defense, it is necessary to determine whether, in this case, defendants get past the threshold barrier that the defense is not available if its application would be "inconsistent * * * with some other provision of law." Although there is little in the legislative history of the statute that helps us to discern what the legislature intended by that language, its conscious choice of very broad language indicates that, if allowing the defense would be inconsistent with any other discernable legislative or other governmental decision, it may not be asserted.

ORS 161.200 was enacted as part of the 1971 revision of the criminal code. Although the *Commentary to the Proposed Oregon Criminal Code,* § 20, states that it was derived from Model Penal Code § 3.02, New York Revised Penal Law § 35.05(2) and Michigan Revised Criminal Code § 605,[3] the language of section (1) is identical to that of the Michigan statute, with some phrases deleted.[4] The language with which

---

[3] The Michigan Revised Criminal Code was not enacted.

[4] The proposed Michigan statute provided:

"(1)   Unless inconsistent with other provisions of this chapter defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury [which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which] is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

"(2)   The necessity and justifiability of conduct under subsection (1) [may] not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder. [Whenever evidence relating to the defense of justification under this section is offered by the defendant, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a justification.]"

The bracketed language was omitted from the Oregon statute.

we are concerned, specifying an exception to the availability of the defense, is the broadest of the three sources to which the drafters referred. The New York counterpart provides the least restrictive exception: The defense is available "[u]nless otherwise limited by the ensuing provisions of this article defining justifiable use of physical force[.]" New York Penal Law § 35.05. The exceptions in Model Penal Code § 3.02(1) lie somewhere between the other two. It permits the defense if

"(b)   neither the Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and   .

"(c)   a legislative purpose to exclude the justification claimed does not otherwise plainly appear."

Although we agree with Judge Graber's concurring opinion that the exceptions in the Oregon statute are closer to those in the Model Penal Code § 3.02(1) than they are to the New York Penal Law § 35.05(2), the Oregon language, taken from the proposed Michigan statute, is broader than that in either the other two. It is doubtful that the phrase of the Oregon statute, precluding the defense if it would be "inconsistent * * * with some other provision of law," means the same thing as § 3.02(1)(c) of the Model Penal Code. ORS 161.200(1) does not require, as does the Model Penal Code, an express legislative foreclosure of the defense; it requires only that the defense be inconsistent with some other provision of law.

Here, it would be inconsistent with Oregon Laws 1983, chapter 470, section 1, which, after *Roe v. Wade, supra,* was decided, repealed all of the laws that might inhibit or restrict a woman in obtaining an abortion, *former* ORS 435.415;[5] *former* ORS 435.425,[6] *former* ORS 435.445,[7] or mak-

---

[5] *Former* ORS 435.415 provided:

"(1) A physician is justified in terminating the pregnancy of an Oregon resident if he has reasonable grounds for believing that:

"(a) There is substantial risk that continuance of the pregnancy will greatly impair the physical or mental health of the mother;

"(b) The child would be born with serious physical or mental defect; or

"(c) The pregnancy resulted from felonious intercourse.

"(2) In determining whether or not there is substantial risk under paragraph (a) of subsection (1) of this section, account may be taken of the mother's total

ing it a crime to perform or aid in an abortion, *former* ORS 435.455,[8] or permitting suspension or revocation of a doctor's license for performing an abortion. *Former* ORS 677.190. It would also be inconsistent with ORS 435.475(3), which prohibits any hospital operated by the state or by a political subdivision in the state from denying admission to a woman seeking an abortion. All of those legislative actions make it clear that the Oregon legislature has chosen, not only not to

---

environment, actual or reasonably foreseeable.

"(3) A justifiable termination of a pregnancy shall be performed only by a physician in a hospital."

[6] *Former* ORS 435.425 provided:

"(1) No pregnancy shall be terminated unless two physicians who are neither related to each other by blood or marriage nor associated with each other in the practice of medicine have certified in writing the circumstances which they believe justify the termination. A signed copy of the certificate shall become part of the hospital record. However, no pregnancy shall be terminated after the 150th day of pregnancy except in accordance with ORS 435.445.

"(2) When there is reason to believe that the pregnancy was the result of felonious intercourse, the administrator of the hospital shall send a copy of the certificate to the district attorney of the county where the hospital is located.

"(3) Failure to comply with any of the requirements of this section gives rise to a rebuttable presumption that termination of the pregnancy was unjustified."

[7] *Former* ORS 435.445 provided:

"(1) Nothing in ORS 435.405 to 435.495, 465.110, 677.188 and 677.190 prevents a physician from terminating a pregnancy without complying with ORS 435.405 to 435.495, 465.110, 677.188 and 677.190 if the physician believes in good faith that:

"(a) The life of the pregnant woman is in imminent danger; and

"(b) There is insufficient time to comply with the requirements of ORS 435.405 to 435.495, 465.110, 677.188 and 677.190.

"(2) A physician who terminates a pregnancy under subsection (1) of this section must report within 48 hours thereafter the termination to the appropriate committee of the hospital in which the termination occurred or to the Health Division if the termination occurred other than in a hospital. The report shall include his certification of the circumstances, conditions and reasons for which the pregnancy was terminated and the reasons why he was unable to comply with ORS 435.405 to 435.495, 465.110, 677.188 and 677.190."

[8] *Former* ORS 435.455 provided:

"(1) A person who purposely terminates the pregnancy of another for purposes other than delivery of a viable birth, unless justified under ORS 435.415, shall be punished upon conviction by imprisonment in the penitentiary for not more than 15 years or by a fine not exceeding $5,000, or both.

"(2) Except as justified under ORS 435.415, a person who induces or knowingly aids a woman to use instruments, drugs or violence upon herself for the purpose of terminating her pregnancy other than by viable birth shall be punished upon conviction by imprisonment in the penitentiary for not more than five years."

regulate abortions in any respect,[9] but also not to interfere with a woman's right to seek and obtain an abortion. The present state of Oregon law is that a woman's decision to have an abortion is left to her and her physician. *See* ORS 435.435 *et seq.* To permit defendants to prevent or interfere with that freedom of choice would be inconsistent with the "other provisions of law." It is clear from the legislative action that no interference with a woman's choice to have an abortion is to be tolerated, and, therefore, the defense is unavailable. ORS 161.200(1).

Affirmed.

**GRABER, J.,** specially concurring.

The majority holds that defendants were not entitled to present the "choice of evils" defense, ORS 161.200(1),[1] because abortions are legal in Oregon and it would therefore be "inconsistent * * * with some other provision of law" to permit the defense in this case. I agree with the majority's result, but not with its analysis. For that reason, I write separately.

The majority misunderstands the purpose of the introductory phrase in ORS 161.200(1). When read in full and in context, its purpose is simply to ensure that choice of evils will not override other, more specific justification defenses and will not be available in situations where the legislature has decided not to allow a justification defense at all.

ORS 161.200 is derived from Model Penal Code §

---

[9] An exception is that facilities where abortions are performed are subject to state regulations as to what medical equipment and personnel must be available, depending on the stage at which the abortion is to be performed. *See* OAR ch 333, div 73.

[1] ORS 161.200(1) provides:

"(1) Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a) That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and ·

"(b) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."

3.02, by way of New York Penal Law § 35.05(2). *See Commentary, Proposed Oregon Criminal Code,* § 20. Section 3.02(1) of the Model Penal Code provides its version of the defense if

"(b)   neither the Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

"(c)   a legislative purpose to exclude the justification claimed does not otherwise plainly appear."

Section 35.05(2) of the New York Penal Law provides that the defense is available "[u]nless otherwise limited by the ensuing provisions of this article defining justifiable use of physical force[.]"

ORS 161.200(1), like New York Penal Law § 35.05(2), places the exceptions to the choice of evils defense in the introduction to the statute. However, the scope of those exceptions in Oregon is closer to Model Penal Code § 3.02(1) than to New York's statute. The Oregon law, as relevant, provides that choice of evils is a defense "[u]nless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law[.]"[2] The first portion reflects Model Penal Code § 3.02(1)(b); the second portion, on which the majority relies, reflects § 3.02(1)(c).

Under the first portion, choice of evils is available unless some other provision of the Criminal Code concerning the justifiable use of physical force supersedes it. Examples of such other defenses include those that immediately follow ORS 161.200. *See* ORS 161.205 to ORS 161.265. Under the second portion, the Model Penal Code would exclude the defense if the legislature plainly intended to do so; Oregon excludes it if to allow it would be inconsistent with some other provision of law. Although the provisions differ in some respects, both require that the legislature intend to foreclose the use of the defense. *Roe v. Wade,* 410 US 113, 93 S Ct 705, 35 L Ed 2d 147 (1973), of course, does not express Oregon intent, legislative or otherwise. Although the repeal of the

---

[2] Because the New York law excludes the choice of evils defense only if a different justification defense supersedes it, and thus provides a more limited exception than does ORS 161.200(1), the Model Penal Code is closer to this portion of the statute and therefore more helpful in understanding it.

laws regulating abortions might express the legislature's intent about abortions, that action does not suggest that the legislature meant to affect the availability of the choice of evils defense. No other provision of law is inconsistent with ORS 161.200 in the way that ORS 161.200(1) contemplates.

I would, then, turn to the other requirements of ORS 161.200(1). Defendants concede that they blocked the doors to the clinic and that their acts constituted criminal trespass. They argue that they violated the criminal trespass law in order to prevent the imminent "public or private injury" of women entering and having abortions. The evidence at the pretrial hearing showed that 19 abortions were scheduled that day and that the clinic performs about 450 each month. There was also evidence to support defendants' belief that each abortion involved the taking of a human life. If an abortion can be a "public or private injury," defendants presented evidence from which a jury could find that they had met the requirements of ORS 161.200(1). I would hold as a matter of law, however, that an abortion is not such an injury.

There is no evidence that the women who were to have abortions on the day of defendants' trespass were doing so other than voluntarily or that those who were to perform the abortions were compelled to participate.[3] No law prohibited the performance of the contemplated abortions, and no Oregon case has held that a properly performed abortion constitutes a tort.[4]

A person may legally do anything that is not prohibited; no legislative or judicial authorization is necessary.[5] Therefore, those involved had a right to seek and to perform the abortions that, according to defendants, were public or

---

[3] *See* ORS 435.485 (physicians and hospital employes and medical staff may elect not to participate in the termination of pregnancies).

[4] The holdings of *Mallison v. Pomeroy*, 205 Or 690, 291 P2d 225 (1955), and *Libbee v. Permanente Clinic*, 268 Or 258, 518 P2d 636, 520 P2d 361 (1974), providing causes of action for injury to or the death of a viable fetus, have not been extended to voluntary abortions.

[5] Because Oregon does not prohibit abortions, *see* n 6, *infra,* the conclusion that those involved had a right to seek and perform the contemplated abortions does not depend on the Supreme Court's holding in *Roe v. Wade, supra.* If Oregon law did prohibit abortions, *Roe* and its progeny would be relevant to the extent that they would render such a law invalid.

private injuries.[6] Accepting defendants' argument would require us to hold that the alleged immorality of a legal, non-tortious act can be a "public or private injury." Nothing in ORS 161.200(1) supports that conclusion.[7] An action is not an injury within the meaning of ORS 161.200(1) simply because the defendant believes it to be wrong or believes that it *ought* to be illegal. In arguing otherwise, defendants in effect ask that they be permitted to act on their moral views by violating an otherwise valid law in order to stop another person from doing what is not *legally* wrongful.[8] The only condition that defendants would place on their power to interfere with the

---

[6] Oregon law does not simply fail to prohibit abortions; it specifically provides for them. In 1983, the legislature repealed all restrictions on decisions to seek or to perform abortions. Or Laws 1983, ch 470, § 1. In addition, no hospital operated by the state or a political subdivision may adopt a policy of excluding or denying admission to a person seeking termination of a pregnancy. ORS 435.475(3). The Health Division by rule has established criteria for licensing termination of pregnancy hospitals. OAR 333-73-200 to OAR 333-73-255. Defendants do not assert that the clinic was unlicensed or otherwise failed to comply with any applicable law. Thus, the actions that defendants sought to prevent were actions for which state law expressly provides.

[7] Judge Rossman gives examples of conduct that is neither tortious nor illegal but that, in his view, constitutes a "public or private injury" under the statute. In his example of the policeman, the officer may well act tortiously if the medical student tells him that he will cause further damage by moving the injured person. Moreover, the harm of the policeman's conduct does not flow from its moral or political content and is not an inherent quality of all similar conduct, as in the present case. *See* ORS 161.200(2). The attempt to prevent an execution that is legal in every way, by engaging in criminal trespass and assault, does not give rise to the choice of evils defense for the reasons suggested in this concurrence, because the execution is not a "public or private injury" under ORS 161.200(1), even if the condemned person is in fact innocent.

[8] ORS 161.200(2) provides:

"The necessity and justifiability of conduct under subsection (1) of this section shall not rest upon considerations pertaining only to the morality and advisability of the [violated] statute, either in its general application or with respect to its application to a particular class of cases arising thereunder."

The commentary notes that, under that subsection, there is no exemption from the criminal trespass statutes for those who invade public offices to protest United States foreign policy. Other commentators suggest that the choice of evils defense

"is generically inappropriate to justify acts of civil disobedience, since the defendant's conduct, rather than attempting to directly avoid [sic] specific harm, attempts to transcend accepted democratic processes and seeks to change a political decision of society which may only secondarily avoid a particular harm or evil." Tiffany and Anderson, "Legislating the Necessity Defense in Criminal Law," 52 Denver LJ 839, 844 (1975).

Although defendants' acts in this case were designed to prevent harm that they believed was occurring, they attempted to prevent that harm by transcending the political decisions of society. ORS 161.200(2) will not permit them to do that; it thus supports my view of what constitutes a "public or private injury" under ORS 161.200(1)(a).

legally innocent activities of others is that they must be able to persuade a jury to accept their moral views rather than those of the person whose legal rights they have violated.

If defendants' view is correct, determining the legality of controversial conduct will not be done by the community through the legislative process or by the courts through the application of legal principles. Rather, it will become a subject for after-the-fact determinations by juries, based on jurors' particular moral views.[9] The potential effect on those who engage in unpopular but legal activities is obvious. The legislature did not intend so major a change in the location of law-making power when it adopted the choice of evils defense. It permitted the jury to balance the injury of violating a law against the benefit of preventing a different injury. It did not intend to permit juries to determine that performing an act that is neither unlawful nor tortious is, nevertheless, an injury by reason of its moral or political content. Defendants may be morally right or politically effective or both, but they do not satisfy the requirements for the choice of evils defense.[10]

Even if a legal abortion could be an injury under ORS 161.200(1), ORS 161.200(2) would foreclose the defense in this case. That subsection requires that the justifiability of conduct under ORS 161.200(1) not rest on considerations of the morality of the violated statute, "either in its general application or with respect to its application to a particular class of cases arising thereunder." *See* n 8, *supra*. Defendants base their choice of evils defense on the assertion that the criminal trespass statutes should not apply to their protest, on moral grounds, against abortion. That is exactly the kind of claim that ORS 161.200(2) forecloses.

Accordingly, I concur in the result.

**ROSSMAN, J.,** specially concurring.

The majority is correct in holding that the choice of evils defense is not available to defendants. It is also correct in

---

[9] Of course, juries have always had the power to acquit a person, despite the requirements of the law, if the jury believes that the person should not be punished criminally. That *power* of acquittal, however, is different from the creation of a *legal* defense that calls on the jury to convict or acquit the defendant on the basis of its opinion of the rightness or wrongness of the conduct of the defendant's victim, when that conduct is neither illegal nor tortious.

[10] My analysis does not depend on the content of the defendants' moral choice. The result would be the same if defendants had violated the criminal trespass law in an attempt to persuade an unwilling physician to perform an abortion for a woman whose life was in danger because of her pregnancy. *See* ORS 435.485.

reaching that result on the ground that application of the defense would be "inconsistent * * * with some other provision of law." ORS 161.200(1). It unfortunately fails, however, to specifically reject the theory that abortion is not a "public or private injury" under the statute, an approach advanced by Judge Graber in her special concurrence. In my view, the majority should have foreclosed any future reliance on that approach, because it unnecessarily restricts the availability of the defense, while implicitly denying that a human fetus may have legal value. I write separately to express that concern and to set forth my own views on the proper application of ORS 161.200.

The rationale of the choice of evils defense is that "the law ought to promote the achievement of higher values at the expense of lesser values[.]" LaFave & Scott, *Criminal Law* 382, § 50 (1972). Because the legislature cannot possibly foresee and provide exceptions for every situation in which a criminal law will conflict with a higher value, "sometimes the greater good for society will be accomplished by violating the literal language of the criminal law." LaFave & Scott, *supra.* Recognizing that fact, the legislature has enacted the choice of evils defense, permitting the jury to weigh competing values "according to ordinary standards of intelligence and morality" in exceptional situations that the legislature has not itself foreseen and decided. However, "when the law has dealt explicitly with the specific situations that present a choice of evils," the defense does not apply. *City of St. Louis v. Klocker,* 637 SW2d 174, 177 (Mo App 1982); *see also* LaFave & Scott, *supra.* When the legislature already has made specific choices between competing values, there simply is nothing for the jury to decide.

Applying the choice of evils defense in defendants' case would be "inconsistent * * * with some other provision of law."[1] ORS 161.200(1). Consistently with the United States

---

[1] According to Judge Graber, the legislative history of ORS 161.200(1) demonstrates that the phrase "inconsistent with * * * some other provision of law" was meant to foreclose use of the choice of evils defense only when it is withdrawn through legislation specifically dealing with its availability. That argument is flawed in two respects. First, the Model Penal Code, on which ORS 161.200 was partially based, states:

"(1) Conduct that the actor believes to be necessary to avoid a harm or evil to

Supreme Court's decision in *Roe v. Wade,* 410 US 113, 93 S Ct 705, 35 L Ed 2d 147 (1973), the Oregon legislature has chosen not to regulate abortions in most respects. The legislature has weighed the competing values of fetal life and a woman's right to privacy and determined that abortion should be permitted. Therefore, the legislature could not have intended abortion to be a type of harm that would justify breaking the law.

I am deeply troubled, however, by the theory advanced by Judge Graber that, because abortion is conduct that is neither tortious nor illegal, it cannot constitute a "public or private injury" under the statute. That reasoning would withdraw the defense from defendants for whom it was meant to be available. Suppose, for example, that a medical student tried to prevent a policeman from moving an injured man because he believed that the man had a spinal injury that could be worsened by the move.[2] Under Judge Graber's view, assuming that the officer was acting reasonably, the student could not assert the choice of evils defense, because he was seeking to prevent conduct that was "neither unlawful nor tortious."

More dramatic examples are possible. Suppose that an individual obtains information that would prove that a man who is about to be executed is innocent. Unable to reach the governor or take other action in time, he attempts to stop

---

himself or to another is justifiable, provided that:

"\* \* \* \* \*

"(c)  a legislative purpose to exclude the justification claimed does not otherwise plainly appear."

*Model Penal Code § 3.02, Official Draft,* (1962). That language does not require that the legislature have enacted legislation specifically designed to foreclose the choice of evils defense in a given situation. Rather, it provides that, if a "legislative purpose" to exclude the justification plainly appears, the defense is not available. Such a purpose "plainly appears" when the legislature has passed a law that makes the same value choice as would be required of a jury if the matter were presented to it.

Second, even if we were to accept Judge Graber's interpretation of § 3.02(1)(c) of the Model Penal Code, Oregon has chosen different language, presumably for a good reason. Assigned its plain meaning, that language forecloses the choice of evils defense in every situation in which permitting its use would conflict with some "other provision of law." As her special concurrence correctly notes, we are bound to follow the Supreme Court's decision in *Roe v. Wade, supra.* Defendants may not assert the defense, because permitting its use would be inconsistent with that law.

[2] This was the factual situation in *City of Chicago v. Mayer,* 56 Ill 2d 366, 308 NE2d 601 (1974).

the execution by forcing his way into the prison, knocking down anyone who gets in his way. He is attempting to prevent the lawful and non-tortious conduct of the executioner, conduct which has been given legal protection. Although, under Judge Graber's analysis, the execution is not a "legal injury" under the statute, few would contend that the legislature did not intend the choice of evils defense to apply in such a situation.

In fact, under that view, one could not use the defense to justify "forcibly restraining a person infected with a highly contagious and dangerous disease" unless the ill person's conduct was either tortious or illegal. *Commentary to Proposed Oregon Criminal Code of 1971,* § 20. It might be neither.[3] Yet the legislature clearly intended that the defense be available in that situation, because it is given as an example of the statute's proper application in *Commentary to Proposed Oregon Criminal Code of 1971,* § 20.[4] It has long been clear that "[a] party is entitled to have his theory of the case presented to the jury if there is evidence to support such theory." *State v. Brown,* 306 Or 599, 604, 761 P2d 1300 (1988) (*quoting State v. Newlin,* 92 Or 589, 594, 182 P 133 (1919)). The choice of evils defense should be available under its plain terms whenever it is not inconsistent with some other provision of law.[5]

---

[3] For example, the person restrained could be delirious or otherwise unaware of the dangers that he posed to others.

[4] Judge Graber apparently concedes that its analysis would foreclose use of the defense in the three specific situations described.

[5] Moreover, it is questionable whether deciding that abortion is not a "legal injury" necessarily bars defendants from using the defense. In *State v. Brown, supra,* the Supreme Court interpreted the meaning of the word "injury" in ORS 811.180(1)(a), which provides an affirmative defense to the charge of driving while suspended if

"[a]n injury or immediate threat of injury to a human being or animal, and the urgency of the circumstances made it necessary for the defendant to drive a motor vehicle at the time and place in question[.]"

It held that, given the legislative purpose of encouraging rescue, a defendant need not prove the existence of an actual injury, but rather

"must reasonably have believed there to be such an injury or threat. To establish that reasonable belief, the defendant must be able to point to evidence in the record from which the jury could find that the defendant actually believed that injury or threat thereof existed and that the information available to the defendant was such as would cause a reasonable person so to believe." 306 Or at 606.

In this case, defendants want to present such evidence.

By arguing that there can be no "injury" if a defendant has violated an otherwise valid law on the basis of moral views of another's legal conduct, Judge Graber would inject a defendant's subjective motivations into the definition of what is a "public or private injury." The fact that a defendant violates a law for moral reasons is relevant to subsection (1)(b), dealing with whether "[t]he threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury" or, as Judge Graber points out, to subsection (2), precluding consideration of the morality of the violated statute in deciding the justifiability of the illegal conduct. However, it is *not* relevant to whether that conduct constitutes a "public or private injury." There are more legitimate bases upon which to deny the defense to defendants, and I see no reason to muddy an already complex area of the law with the special concurrence's approach.

Finally, the analysis creates troubling anomalies. First, if one may only justify preventing the conduct of another if it is wrongful, it is difficult to understand why he would need a defense at all. Second, Judge Graber's position leads to the conclusion that one may justify trespass to save a VCR, because harm to property is "legal injury." However, trespass to save what a defendant might view as human life is not justifiable, because destruction of a fetus is not a "legal injury," at least not in an abortion clinic. Indeed, the argument implies that existence of a fetus has no legal value, a dubious and disquieting proposition.[6] The reason that defendants are barred from asserting the choice of evils defense is *not* that there is no "private or public injury" to a fetus in an abortion. It is that our state, speaking through its democratically elected legislature, already has decided that a woman's right to procreative freedom outweighs any injury that might exist.

---

[6] *See, e.g., Libbee v. Permanente Clinic,* 268 Or 258, 518 P2d 636, 520 P2d 361 (1974); *Mallison v. Pomeroy,* 205 Or 690, 697, 291 P2d 225 (1955). Moreover,

> "[m]any cases—especially the more recent ones—have expressed the view that an action may be maintained to recover damages for prenatal injuries negligently inflicted regardless of whether the unborn child was viable or non-viable at the time of injury, provided it was subsequently born alive." *Annot.,* "Liability For Prenatal Injuries," 40 ALR3d 1222, 1230 (1971).

In short, it is unnecessary and, in my view, unwise to deny defendants an opportunity to assert the choice of evils defense to the jury on the basis that abortion is not a "legal injury." That rationale could deprive some later defendant of an appropriate defense. Moreover, it is an unnecessary legal fiction with disturbing implications.

Edmonds, J., joins in this special concurrence.