**ALLSTATE INSURANCE COMPANY, an Illinois corporation, Plaintiff,**

v.

**Rosemary BELEZOS, Thomas Belezos, and Lovejoy Specialty Hospital, Defendants.**

**No. 89–837–RE.**

United States District Court, D. Oregon.

July 10, 1990.

Robert E. Maloney, Jr., Lawrence P. Riff, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, Or., for plaintiff.

Norm Lindstedt, Lindstedt & Buono, Portland, Or., for defendants Rosemary and Thomas Belezos.

## OPINION

REDDEN, District Judge.

Plaintiff Allstate Insurance Company (Allstate) brings this action seeking a declaration that it is not required to defend or indemnify defendant Rosemary Belezos in an action pending in a Circuit Court of the State of Oregon (State Court). Plaintiff and defendants Rosemary and Thomas Belezos have filed cross motions for summary judgment. I grant plaintiff's motion for summary judgment, and deny defendants' motion for summary judgment.

## BACKGROUND

*A) State Court Action*

The Lovejoy Specialty Hospital, Inc. (Lovejoy), a Portland Oregon hospital at which abortions are performed, brought an action in State Court against defendant Rosemary Belezos (Belezos) and several other individuals. In that action, Lovejoy alleges that Belezos, personally or in concert with other defendants opposed to abortions, has engaged in a course of conduct specifically intended to harm its business. Lovejoy's complaint states claims of nuisance and trespass. Lovejoy alleges that the defendants have intentionally trespassed on its property to block the access of patients and employees. Lovejoy alleges that defendants have intentionally harassed, intimidated, embarrassed, coerced, and accosted its patients and employees by shouting that they are "murderers," and "baby killers."

It asserts that defendants have intentionally caused distress and disrupted medical services and procedures, that defendants twice damaged hospital doors, and that defendants' actions required it to spend $9,309 to improve physical security at the hospital.

Lovejoy seeks a permanent injunction prohibiting the conduct alleged. It also seeks to recover the amount it spent to improve security, and $250,000 in punitive damages.

Rosemary Belezos testified that she was arrested twice for trespassing on Lovejoy's property. Following her conviction for trespass, she violated the terms of her probation by again entering Lovejoy's property. She testified that she has carried signs opposing abortion and depicting aborted fetuses in front of Lovejoy on hundreds of occasions, and that she tries to persuade Lovejoy's clients not to have abortions. Rosemary Belezos testified that she is aware that Lovejoy's business will be damaged if her attempts are successful. She also testified that she has attempted to persuade members of Lovejoy's staff not to perform abortions, and that she is aware that her actions agitate staff members.

## B) Allstate's Insurance Policies

Allstate sold Rosemary and Thomas Belezos a homeowners policy and a "personal umbrella" policy, providing excess liability coverage, that were in force at all times relevant to this action.

### 1) Homeowners Policy

Under the homeowners' policy, Allstate agreed to pay damages for which its insured becomes legally obligated because of bodily injury or property damage "arising from an accident." The homeowners policy defines bodily injury as "physical harm to the body, including sickness or disease." Property damage is defined as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." The homeowners policy excludes coverage for bodily injury or property damage resulting from "an act or omission intended or ex-pected to cause bodily injury or property damage." This exclusion applies "even if the bodily injury or property damage is of a different kind or degree, or is sustained by a different person or property, than that intended or expected."

Under the homeowners policy, Allstate agreed to defend its insured in actions brought against the insured to recover for damages covered by the policy.

### 2) Umbrella Policy

Under the umbrella policy, Allstate agreed to pay for "personal injury or property damage caused by an occurrence." An "occurrence" is defined as "an accident or a continuous exposure to conditions," and includes "personal injury or property damage caused by an insured while trying to protect persons or property from injury or damage." "Personal injury" includes false arrest, false imprisonment, wrongful detention, wrongful entry, invasion of rights of occupancy, and malicious prosecution. "Property damages" includes physical injury to tangible property, and resulting loss of use. It also includes loss of use of tangible property not physically injured if the loss of use is caused by an occurrence.

The umbrella policy lists several coverage exclusions. Exclusion 8 denies coverage for "any intentionally harmful act or omission of an insured." Coverage of several kinds of personal injury, including wrongful entry and invasion of rights of occupancy, is specifically excepted from this exclusion.

### 3) Parties' Dispute

Rosemary Belezos demanded that Allstate defend her in the action brought by Lovejoy. Allstate is defending her in that action, subject to a reservation of rights. In the present action, Allstate seeks a declaration that it is not required to defend or indemnify her in the State Court action.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no

genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* When the moving party shows the absence of an issue of material fact, the non-moving party must go beyond the pleadings and show that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. No genuine issue for trial exists where the record as a whole could not lead the trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## DISCUSSION

### A) Homeowners Policy

#### 1) Bodily Injury and Property Damage Not Alleged

■ In determining whether an insurer is obligated to defend an action against its insured, the court considers the allegations of the complaint filed against the insured. *Isenhart v. General Casualty Co.,* 233 Or. 49, 54, 377 P.2d 26 (1962). Lovejoy alleges that defendants have unreasonably interfered with its business. It alleges that defendants have intentionally intimidated, harassed, and embarrassed its clients and staff, and asserts that this interference raises the risk of complications and injury to patients. Lovejoy does not, however, allege specific bodily injury.

Though Lovejoy's complaint alleges that defendants caused certain damage to its property, its complaint does not seek compensation for that damage. The $9,309 which it demands is not for "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." Instead, Lovejoy asks for that amount as compensation for additional security measures allegedly necessitated by defendants' actions.

Lovejoy's State Court complaint, alleging nuisance and trespass, does not state claims for bodily injury and property damage covered by Allstate's homeowner's policy. Allstate is therefore entitled to summary judgment on its contention that it is not required to defend or indemnify Rosemary Belezos under that policy.

#### 2) Actions and Damages Not Accidental

■ Allstate's homeowners policy covers only bodily injury or property damage caused by accidents. When, as here, the policy does not define "accidents," that term is applied as commonly understood by the purchasing public, and includes unforeseen, unexpected, and unintended events. *Albertson's, Inc. v. Great Southwest Fire Ins. Co.,* 83 Or.App. 527, 531, 732 P.2d 916, *rev. denied,* 303 Or. 332, 736 P.2d 566 (1987).

■ Lovejoy alleges that Rosemary Belezos has intentionally interfered with its business. Rosemary Belezos testified that she has trespassed on Lovejoy's property, tried to convince Lovejoy staff not to perform abortions, and carried signs in front of Lovejoy on hundreds of occasions depicting aborted fetuses and stating that "abortion is murder." She testified that she was aware that, if her actions were successful, Lovejoy's business would be hurt.

Even if Lovejoy's complaint sought damages for bodily injury and property damage, Allstate would be entitled to summary judgment on its contention that it is not obligated under the homeowners policy because Rosemary Belezos cannot establish that the damages alleged resulted from an accident. Lovejoy alleges intentional acts resulting in intended harm. Given these allegations and her own testimony, Rosemary Belezos cannot counter Allstate's contention that the actions and damages alleged in Lovejoy's complaint were not an accident. Her assertion that she was acting to save the lives of unborn children is insufficient to transform the alleged destruction of Lovejoy's business into an unintended, unforeseen, or unexpected event.

## B) Umbrella Policy

As noted above, Allstate's umbrella policy covers an insured's liability for personal injury and property damage caused by an occurrence. An occurrence is defined as "an accident or a continuous exposure to conditions," and includes "personal injury or property damage caused by an insured while trying to protect persons or property from injury or damage." Wrongful entry and invasion of rights of occupancy are excepted from the policy's exclusion of coverage for intentionally harmful acts.

Allstate's obligation to defend and indemnify Rosemary Belezos under the umbrella policy turns on 1) whether the Lovejoy's complaint alleged damages resulting from "occurrences;" 2) whether Rosemary Belezos arguably acted to protect persons or property from injury or damage; and 3) the meaning and enforceability of the provision excepting wrongful entry and invasion of rights of occupancy from the exclusion of intentionally harmful acts from coverage.

### 1) Occurrences

■ The parties' dispute the meaning of "occurrence," which the policy defines as including "continuous exposure to condition." Defendants argue that "it cannot be claimed that the Lovejoy complaint is not at least a 'continuous exposure to conditions.'" Allstate contends that an "occurrence," even if continuous, must be accidental in order for coverage to apply.

The parties have cited, and I have found, no controlling definition of "occurrence" by an Oregon court. According to Dey and Ray, *Annotated Comprehensive General Liability Insurance Policy*, at 3 (1984), "occurrence" is intended to extend coverage "contingent on accidental happening, but not restricted to suddenness." In *Aetna Casualty and Sur. Co. v. Freyer*, 89 Ill.App.3d 617, 44 Ill.Dec. 791, 793, 411 N.E.2d 1157, 1159 (1980), the court said that an "occurrence" must be accidental in order to be covered by a policy defining occurrences as accidents and exposures to conditions resulting in bodily injury or property damage. The court cited 7A *Ap-pleman Insurance Law and Practice* Section 4493 for the proposition that the term "eliminates the need for an exact finding as to the cause of damages so long as they are neither expected nor intended from the standpoint of the insured." *Id.* The court concluded that "natural and ordinary consequences of an act do not constitute an occurrence." *Id.*

I conclude that "continuous exposure to conditions" refers to *accidental* repeated or continued exposure to injurious conditions. This conclusion comports with the above cited authorities, and with the plain language of the policy. Because Lovejoy's complaint alleges intentional, not accidental exposure to the defendants' attempts to damage its business, the discussion of accidental damages in Section (A)(2) above applies equally here.

### 2) Protection of Persons and Property

The definition of "occurrence" includes personal injury and property damage caused by an insured while trying to protect persons or property from injury or damage. Rosemary Belezos contends that she acted at the Lovejoy clinic to protect unborn persons. She argues that "it cannot be argued that an unborn child (or fetus) is not either a 'person' or 'property.'"

This argument fails. The Oregon legislature has repealed all restrictions of the right to seek or perform voluntary abortions. *State v. Clowes*, 100 Or.App. 266, 277, n. 6, 785 P.2d 1071 (1990) (Graber, J. concurring). No Oregon court has held that a properly performed abortion constitutes a tort. *Id.* at 276, 785 P.2d 1071. If abortion does not inflict a tortious injury upon either the fetus or a woman choosing an abortion, it does not entail a legally cognizable "personal injury" or "property damage."

Allstate's coverage cannot be expected to extend to alleged intentional interference with a statutorily recognized right of women to seek, and Lovejoy's right to provide, voluntary abortions. Interference with the right to seek or provide abortions cannot

qualify as protection of persons or property under the terms of the umbrella policy.

### 3) Exceptions to exclusion of coverage for intentionally harmful acts

 Defendants rely heavily on the exception of personal injuries related to wrongful entry and invasion of rights of occupancy from exclusion of coverage of damages caused by intentionally harmful acts. I conclude that this reliance is misplaced for two reasons. First, interpreted in the context of the policy as a whole, the exceptions to the exclusion can logically apply only to intentional acts performed while trying to protect persons or property. The exceptions to the exclusions can refer only to occurrences otherwise covered by the policy, because the policy covers only occurrences. The only expansion of the meaning of the term "occurrence" here beyond its generally accepted application to accidental events or exposures is the extension of coverage to personal injury and property damage resulting from attempts to protect persons and property. Because the only intentional acts insured as occurrences are those intended to protect persons and property, only those wrongful entries and invasions of occupancy rights performed to protect persons and property are excepted from the exclusion of intentionally harmful acts. As discussed above, Ms. Belezos was not acting to prevent legally recognized personal injury or property damage. The exceptions to the exclusions do not, therefore, apply to her actions.

Second, the exceptions to the exclusion of coverage of intentionally harmful acts cannot provide coverage here because public policy prohibits insuring intentionally harmful conduct. In *Isenhart v. General Casualty Co.*, 233 Or. 49, 53, 377 P.2d 26 (1962), the Court held that "a clause in a contract of insurance purporting to indemnify the insured for damages recovered against him as a consequence of his intentional conduct in inflicting injury upon another is unenforceable by the insured on the ground that to permit recovery would be against public policy." Likewise, in *Snyder v. Nelson*, 278 Or. 409, 414, 564 P.2d 681 (1977), the Court noted that "under usual circumstances, it is against public policy for a tortfeasor to insure against liability for intentionally inflicted injury or damage." Under the guidance of these cases, even if the exceptions to exclusion of liability for intentionally harmful acts applied, public policy would preclude their enforcement.

### CONCLUSION

This case involves no material issues of fact, but only questions of law. I grant Allstate's motion for summary judgment (# 13) and deny defendants' motion for summary judgment (# 18).