Argued and submitted June 6, the decision of the Court of Appeals affirmed and the judgment of the district court affirmed November 26, 1990, reconsideration denied February 5, 1991

STATE OF OREGON,
*Respondent on Review,*

*v.*

BRIAN WOODBRIDGE CLOWES,
*Petitioner on Review.*

(DA 372447-8806; CA A50128 (Control); SC S36922)

STATE OF OREGON,
*Respondent on Review,*

*v.*

JUDY LOIS HAGER,
*Petitioner on Review.*

(DA 372448-8806; CA A50129; SC S36946)

STATE OF OREGON,
*Respondent on Review,*

*v.*

MICHAEL JAMES KINSEY,
*Petitioner on Review.*

(DA 372450-8806; CA A50132; SC S36933)

STATE OF OREGON,
*Respondent on Review,*

*v.*

RACHEL A. WOLCOTT,
*Petitioner on Review.*

(DA 372446-8806; CA A50136; SC S36946)
(Cases Consolidated)

801 P2d 789

Richard L. Stradley, Hillsboro, argued the cause and filed the petition for petitioner on review Brian Woodbridge Clowes.

Norman L. Lindstedt, Lindstedt & Buono, P.C., Portland, argued the cause and filed the petition for petitioners on review Judy Lois Hager and Rachel A. Wolcott.

William E. McCann, Tillamook, argued the cause and filed the petition for petitioner on review Michael James Kinsey.

Janet Klapstein, Assistant Attorney General, Salem,

argued the cause for respondent on review. With her on the response brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Melanie E. Mansell, Sheridan, filed a brief *amici curiae* on behalf of The Rutherford Institute, Charlottesville, Virginia.

Before Peterson, Chief Justice, and Carson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

UNIS, J.

## UNIS, J.

The question presented in this case is whether the statutory defense of choice of evils, ORS 161.200,[1] is available to anti-abortionists who were charged with criminal trespass in the second degree, ORS 164.245,[2] after they had entered the premises of an abortion clinic, attempted to prevent patients who were in the first trimester of pregnancy from having abortions, blocked access to the clinic by sitting in the doorways, and refused to leave when asked. We hold as a matter of law that the defendants are not entitled to assert the choice of evils defense.

Lovejoy Surgicenter (the clinic) is a clinic that performs abortions. On June 18, 1988, defendants were arrested and charged with criminal trespass in the second degree for the conduct described above. Defendants entered not guilty pleas, requested jury trials, and gave timely notice of their intent to rely on the statutory defense of choice of evils, ORS 161.200.

The state filed a motion *in limine* to exclude any evidence of the defense. At a pretrial hearing, defendants made an offer of proof on the evidence it sought to present to the jury. Defendants contended that their violation of the criminal trespass law was an emergency measure that was

---

[1] ORS 161.200 provides:

"(1) Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a) That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

"(2) The necessity and justifiability of conduct under subsection (1) of this section shall not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder."

[2] ORS 164.245 provides:

"(1) A person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully in or upon premises.

"(2) Criminal trespass in the second degree is a Class C misdemeanor."

necessary to avoid the imminent death of unborn children. The evidence at the pretrial hearing showed, *inter alia,* that 19 abortions were scheduled at the clinic on June 18, 1988, and that all of the patients were within the first trimester, ranging from 6 to 11 weeks of gestation.[3] There was evidence offered by defendants in the form of expert opinion testimony that life begins at the time of conception. There also was evidence to support defendants' assertion that each abortion involved the taking of a human life. There was no evidence that the women who were to have abortions on the day of defendants' trespass were doing so other than voluntarily or that those who were to perform abortions were compelled to participate. Defendants do not assert that the clinic was unlicensed or otherwise failed to comply with any applicable law.

The trial court found that defendants had proffered sufficient evidence on all the elements of the choice of evils defense, generally, to submit it to the jury. Nevertheless, the trial court granted the state's motion to exclude evidence of the defense on the ground that to admit such evidence would be inconsistent with *Roe v. Wade,* 410 US 113, 93 S Ct 705, 35 L Ed 2d 147 (1973).[4] Because of the trial court's ruling, defendants withdrew their request for a jury trial and proceeded to a court trial on stipulated facts. The trial court found defendants guilty.[5]

Defendants appealed from the resulting judgment. The Court of Appeals, in an *in banc* decision, affirmed. *State v. Clowes,* 100 Or App 266, 785 P2d 1071 (1990). A majority of that court held:

"The present state of Oregon law is that a woman's decision to

---

[3] Also scheduled at the clinic that day was one second trimester pregnancy at 22 weeks of gestation, in which the patient had AIDS. The trial court elected not to rely on the AIDS case as a basis for its decision. We do not consider it here.

[4] Although the record is not entirely clear, it appears that the trial court concluded that allowing defendants to avail themselves of the statutory choice of evils defense would constitute state action, by which the state would be sanctioning defendants' interference with the pregnant women's federal constitutional privacy rights as recognized in *Roe v. Wade,* 410 US 113, 93 S Ct 705, 35 L Ed 2d 147 (1973), and subsequent cases.

[5] Defendants were charged and tried separately. As a matter of judicial economy, the trial court allowed each defendant to join the legal and factual assertions of the other defendants in the pretrial proceeding. In this court, as in the Court of Appeals, the cases of the named defendants are consolidated for argument and decision.

have an abortion is left to her and her physician. *See* ORS 435.435 *et seq.* To permit defendants to prevent or interfere with that freedom of choice would be inconsistent with the 'other provisions of [Oregon] law.' It is clear from the legislative action that no interference with a woman's choice to have an abortion is to be tolerated, and, therefore, the [choice of evils] defense is unavailable. ORS 161.200(1)."

*Id.* at 274. Judge Graber, in a specially concurring opinion, agreed that the choice of evils defense was not available to defendants, but for different reasons. She "would hold as a matter of law * * * that an abortion is not [a 'public or private injury' as those terms have meaning in the context of ORS 161.200(1)(a)]." *Id.* at 276. Judge Graber also stated that "[d]efendants base their choice of evils defense on the assertion that the criminal trespass statutes should not apply to their protest on moral grounds, against abortion[,]" and "[t]hat is exactly the kind of claim that ORS 161.200(2) forecloses." *Id.* at 278.

We allowed review to decide whether the choice of evils defense, sometimes referred to as the defense of necessity, is available to defendants under the facts of this case.

Defendants first argue that "the trial court abuse[d] its discretion in relation to the motion *in limine* by requiring [them] to present the entirety of * * * [their choice of evils defense] evidence to the court in a pretrial offer of proof." We disagree.

Evidence which is not relevant is not admissible. OEC 402. The standard to be used in determining whether proffered evidence is relevant is supplied by OEC 401. That rule provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Under OEC 401's relevancy standard, facts must be "of consequence to the determination of the action" (*i.e.,* "material")[6] for them to be relevant. Whether or not facts are of consequence is determined not by the rules of evidence but by the

---

[6] OEC 401 subsumes the concept of materiality in the definition of relevance.

pleadings and the substantive law. *McCormick on Evidence* 541, § 185 (3rd ed 1984). If under the substantive law the choice of evils defense is not available to defendants in this case, then evidence in support of that defense would not be "of consequence to the determination of the action" and, therefore, would be irrelevant, OEC 401, and inadmissible, OEC 402. The trial judge must decide, under OEC 104(1), whether the proffered evidence satisfies the minimum threshold of relevancy required by OEC 401, *i.e.*, whether the proffered evidence (1) has any tendency to prove or disprove a fact (2) that is "of consequence to the determination of the action."

■ In *State v. Foster,* 296 Or 174, 183, 674 P2d 587 (1983), we expressly approved the use of a pretrial motion *in limine* to obtain a ruling on evidence before the evidence is sought to be introduced. *See State v. McClure,* 298 Or 336, 340, 692 P2d 579 (1984) (to the same effect). We recognized that one of the purposes of a motion *in limine* is to insulate the jury from exposure to harmful inadmissible evidence. *State v. Foster, supra,* 296 Or at 183. In this case, the trial court was well within its discretion when it required defendants to present evidence of their defense of choice of evils in a pretrial offer of proof.[7]

---

[7] Requiring evidence in the form of an offer of proof may serve another purpose. In this case, the trial court was called upon to determine the meaning of a statute, ORS 161.200, and to decide whether under that law defendants were entitled to introduce evidence in support of the defense of choice of evils. An offer of proof is an appropriate vehicle for supplying the court with facts and information to help it perform that task. Facts utilized by a court to "help [it] to determine the context of the law and policy and to exercise its judgment or discretion in determining what course of action to take" have been described as judicial notice of legislative facts. *See* Davis, *Judicial Notice,* 55 Colum L Rev 945, 952 (1955); Strong, Evidence, § 3.18 (Oregon CLE 1986); *see also Chartrand v. Coos Bay Tavern, Inc.,* 298 Or 689, 693, 696 P2d 513 (1985).

"[T]he term 'legislative' facts is not restricted to facts developed and relied upon by the legislature in the process of formulating statutory law, but extends to all facts utilized by the courts in determining what the law, either statutory or decisional, is or should be."

Cleary, Strong, Broun and Mosteller, Evidence, Cases and Materials 349 (4th ed 1988). Judicial notice of legislative facts is not governed by the provisions of OEC 201, and the limitations and standards of OEC 201 do not control notice of legislative facts. *State v. Brown,* 297 Or 404, 420, n 7, 687 P2d 751 (1984). We have recognized the distinctive nature of legislative facts in several cases. *See, e.g., Chartrand v. Coos Bay Tavern, Inc., supra,* 298 Or at 693-94 (court takes judicial notice of legislative facts when it takes notice of facts for the purpose of determining what the common law of this jurisdiction is or ought to be); *State v. Brown, supra,* 297 Or at 417, n 4 (court specifically points out facts judicially noticed, *i.e.,* the inaccuracies of polygraph examination, were noticed to determine a rule of law regarding inadmissibility of polygraph results).

Moreover, a review of the legislative history relating to the enactment of ORS 161.200 nowhere demonstrates that the trial judge may not determine in the first instance whether a defendant's evidence relating to the choice of evils defense is admissible. Rather, the history evidences a legislative intent to give the trial court discretion to hold a pretrial hearing to rule on the applicability of the defense. *See* Minutes, Criminal Law Revision Commission, November 7, 1969, pp 25-30. *See also* Commentary, Proposed Oregon Criminal Code 20, § 20 (1970).

Defendants next contend that the trial court erred as a matter of law in excluding evidence in support of their choice of evils defense, ORS 161.200, thereby precluding them from arguing their only putative defense to the criminal trespass charge to the jury.

Before addressing that contention and examining ORS 161.200, which defines the contours of the choice of evils defense, a brief review of the recent history of Oregon legislation concerning abortion is helpful to an understanding of the legal issues presented in this case.

In 1969, the Oregon legislature enacted *former* ORS 435.405 *et seq.* Those statutes, which were based on Model Penal Code Section 230.3 (1962), *see* Comment, *Abortion, Oregon Style,* 49 Or L Rev 302 (1970), allowed an abortion when (1) there was "substantial risk that continuance of the pregnancy [would] greatly impair the physical or mental health of the mother,"[8] (2) "[t]he child would be born with serious physical or mental defect,"[9] or (3) "[t]he pregnancy resulted from felonious intercourse."[10] After the 150th day, abortion was permitted only when "[t]he life of the pregnant woman [was] in imminent danger."[11] Under Oregon law, abortions could be performed only by licensed physicians in licensed hospitals.[12] Except in emergency cases, two other

---

[8] *Former* ORS 435.415(1)(a) (*repealed by* Or Laws 1983, ch 470, § 1).

[9] *Former* ORS 435.415(1)(b) (*repealed by* Or Laws 1983, ch 470, § 1).

[10] *Former* ORS 435.415(1)(c) (*repealed by* Or Laws 1983, ch 470, § 1).

[11] *Former* ORS 435.445(1) (*repealed by* Or Laws 1983, ch 470, § 1).

[12] *Former* ORS 435.415(3); 435.405(2) and (3) (*repealed by* Or Laws 1983, ch 470, § 1).

physicians had to certify in writing the circumstances justifying an abortion.[13] There were record keeping and reporting requirements.[14] Assistance in self-abortion was unlawful.[15] With some exceptions, it was a crime to perform or aid in an abortion.[16] A doctor's license could be suspended or revoked for performing an abortion not permitted by Oregon law.[17] The limitations on abortion did not apply to "the prescription, administration, or distribution of drugs or other substances for avoiding pregnancy, whether by preventing implantation of a fertilized ovum or by any other method that operates before, at, or immediately after fertilization."[18] Oregon law required the written consent of the pregnant woman, or the written consent of a parent if she was an unmarried minor, or the written consent of her husband if she was married and living with her spouse.[19] Current Oregon law recognizes the right of an individual to refuse to participate in an abortion[20] and the right of private hospitals to deny use of their facilities for such purpose.[21]

In 1973, the Supreme Court of the United States handed down its landmark decisions in *Roe v. Wade, supra,* and *Doe v. Bolton,* 410 US 179, 93 S Ct 739, 35 L Ed 2d 201 (1973). In those opinions, the Supreme Court held that during the first trimester of pregnancy, the right of the woman to terminate her pregnancy is *absolute.* In the second trimester, a state may choose to regulate abortion procedures in ways that are reasonably related to maternal health. In the final trimester, the state may regulate abortion for the preservation of the life of the fetus. In *Doe v. Bolton, supra,* the Supreme Court struck down a Georgia statute that limited abortions in a manner similar in many respects to those provisions in *former* ORS Chapter 435, discussed above.

---

[13] *Former* ORS 435.425(1); 435.445(1) (*repealed by* Or Laws 1983, ch 470, § 1).

[14] *Former* ORS 435.425; 435.435(2); 435.445(2); 435.495(1) (*repealed by* Or Laws 1983, ch 470, § 1).

[15] *Former* ORS 435.455(2) (*repealed by* Or Laws 1983, ch 470, § 1).

[16] *Former* ORS 435.455 (*repealed by* Or Laws 1983, ch 470, § 1).

[17] ORS 677.190 (*amended by* Or Laws 1983, ch 470, § 4).

[18] *Former* ORS 435.465 (*repealed by* Or Laws 1983, ch 470, § 1).

[19] *Former* ORS 435.435 (*repealed by* Or Laws 1983, ch 470, § 1).

[20] ORS 435.485.

[21] ORS 435.475.

In 1973, a special three-judge panel of the United States District Court for the District of Oregon in *Benson v. Johnson,* No. 70-226, slip op at ___ (DC Or Feb. ___, 1973), declared portions of *former* ORS Chapter 435 unconstitutional.[22] Following that decision, the Oregon Attorney General issued a letter of advice explaining which statutory provisions specifically were declared unconstitutional by the *Benson* court and which statutory provisions were rendered meaningless or affected by the decision. *See* Oregon Attorney General Letters of Advice (March 27, 1973).

A decade later, the Oregon Legislature enacted 1983 Oregon Laws, Chapter 470. That legislation repealed those Oregon statutes that might inhibit or restrict a woman in obtaining an abortion, including those sections declared unconstitutional in *Benson v. Johnson, supra.* Only right of conscience provisions and certain record keeping requirements now remain on the books.[23] In addition, the Oregon legislature enacted a law that assumes abortions will be performed. No hospital operated by the state or a political subdivision may adopt a policy of excluding or denying admission to a woman seeking termination of pregnancy. ORS 435.475(3). At the time of defendants' trespasses, the Health Division by rule had established criteria for licensing termination of pregnancy hospitals. *Former* OAR 33-73-200 to OAR 33-73-255. Facilities where abortions are performed, for example, were subject to state regulations as to what medical equipment must be available, depending on the stage at which the termination of pregnancy is to be performed. *Id.* Currently, OAR 333-71-000(1)(b)(A) and (1)(c)(A) establish procedures for outpatient surgery involving termination of pregnancy.

The above legislative history makes it clear that current Oregon law provides that the decision whether to terminate a pregnancy is left to the woman and her physician.[24]

---

[22] The sections declared unconstitutional were *former* ORS 435.415 (limitation of place and circumstances of abortion), *former* ORS 435.425 (physician certification and 150-day limitation), *former* ORS 435.435(1) (spousal or guardian consent), *former* ORS 435.425(2) and *former* ORS 435.435(2) (record keeping and reporting requirements), and *former* ORS 435.455 (criminal penalties for unauthorized abortions).

[23] *See* ORS 435.475; 435.485; 435.496.

[24] Because, as previously discussed, Oregon does not prohibit voluntary and properly performed abortions, "the conclusion that those involved had a right to seek and perform the contemplated abortions does not depend on the [United States] Supreme Court's holding in *Roe v. Wade, supra.* If Oregon law did prohibit abortions, *Roe* and its progeny would be relevant to the extent that they would render such a law invalid." *State v. Clowes,* 100 Or App 266, 276, n 5, 785 P2d 1071 (1990) (Graber, J., specially concurring).

Let us now turn to ORS 161.200.[25] To determine whether the choice of evils defense set forth in ORS 161.200 is available to defendants in this case, we must first decide whether to permit its use by them would, in the words of subsection (1), be "inconsistent * * * with some other provision of law," as that phrase has meaning in the context of ORS 161.200(1). If allowing the defense would be "inconsistent with some other provision of law," it may not be asserted. If not, then the availability of the defense is dependent upon whether the other preconditions to its use set forth in ORS 161.200 are satisfied.

■    The phrase "inconsistent with some other provision of law" is not defined in the statute. It is appropriate, therefore, to examine legislative history surrounding the enactment of ORS 161.200 for clues to that phrase's meaning.

ORS 161.200 was enacted as section 20 of the 1971 revision to the Oregon Criminal Code. The commentary to the Proposed Oregon Criminal Code Section 20 states that it was derived from Model Penal Code Section 3.02, New York Revised Penal Law Section 35.05(2) and proposed but not enacted Michigan Revised Criminal Code Section 605. Subsection (1) of ORS 161.200 is substantially similar to the proposed Michigan statute.[26] Under the proposed Michigan statute, the defense is available "[u]nless inconsistent with other provisions of this chapter defining justifiable use of

---

[25] See supra note 1.

[26] The proposed Michigan statute provided:

"(1) Unless inconsistent with other provisions of this chapter defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury [which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which] is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

"(2) The necessity and justifiability of conduct under subsection (1) [may] not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of case arising thereunder. [Whenever evidence relating to the defense of justification under this section is offered by the defendant, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a justification.]"

The bracketed language was omitted from the Oregon statute.

physical force, or *with some other provision of law.*" (Emphasis added.) Proposed Michigan Revised Criminal Code Section 605(1). The Model Penal Code counterpart permitted the defense if

"(a)   the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged; and

"(b)   neither the Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

"(c)   a legislative purpose to exclude the justification claimed does not otherwise plainly appear."

Model Penal Code Section 3.02(1) (1962) Official Draft.

The New York statute makes the defense available "[u]nless otherwise limited by the ensuring provisions of this article defining justifiable use of physical force[.]" New York Penal Law Section 35.05(2).

There is little in the legislative history of ORS 161.200 that helps us to discern what the legislature intended by the broad language "inconsistent * * * with some other provision of law." It is apparent, however, that that language is more restrictive than its New York counterpart. It also is clear, as the majority of the Court of Appeals said, that the phrase "inconsistent * * * with some other provision of law," as used in the Oregon statute, does not "mean[] the same thing as § 3.02(1)(c) of the Model Penal Code. ORS 161.200(1) does not require, as does the Model Penal Code, an express legislative foreclosure of the defense; it requires only that the defense be inconsistent with some other provision of law." *State v. Clowes, supra,* 100 Or App at 272.

In *City of St. Louis v. Klocker,* 637 SW 2d 174 (Mo App 1982), three defendants were charged with trespass after they had entered an abortion clinic, attempted to dissuade patients from having abortions by detailing their physical and psychological dangers, and blocked access to the procedure rooms by sitting in a doorway. At the trial on charges of trespassing, they raised the statutory affirmative defense of necessity. The defendants contended that the injury avoided by their conduct was the "killing of human life" by the abortions of unborn fetuses. The Missouri Court of Appeals ruled

as a matter of law that the defense was not available to the defendants. The court stated, *inter alia,* that the Missouri statute [§ 563.026 RSM 1978] provides that necessity is available as a defense only if it is not " 'inconsistent . . . with some other provision of law.' " *Id.* at 177. The Missouri court interpreted that language to "simply mean[] that the legislature's decision prevails if and when it makes specific value choices," and that " 'competing values which have been foreclosed by deliberate legislative choice are excluded from the general defense of justification[.]' " *Id.* The court found that the Missouri legislature had made specific value choices in the area of abortion.

■    We believe that the interpretation given by the Missouri court captures the essence of what the Oregon legislature intended by its conscious choice to include the broad language "inconsistent * * * with some other provision of law" in ORS 161.200(2). The Oregon legislature made a deliberate value decision when, in 1983, as previously discussed, it repealed the Oregon statutes that restricted a woman's right to terminate her pregnancy and enacted law that assumes abortions will be performed. Here, the actions that defendants sought to prevent were actions permitted under Oregon law. The interests that defendants seek to vindicate are not, therefore, consistent with that legislative decision. The present state of Oregon law is that a decision to terminate a pregnancy is a matter between a pregnant woman and her doctor. Hence, the defense of choice of evils, ORS 161.200, is unavailable to defendants in this case because it is, in the words of the statute, "inconsistent * * * with some other provision of law." ORS 161.200(1).

■    There is yet another reason why the defense of choice of evils is unavailable to defendants in this case. Even if the defense were not "inconsistent * * * with some other provision of law," a precondition to the availability of the defense is that the defendants' "conduct [must be] necessary as an emergency measure to avoid an imminent *public or private injury.*" (Emphasis added.) ORS 161.200(1)(a). Here again, neither the statute nor legislative history supplies us with the intended meaning of the statutory terminology "public or private injury." Normally, *in the legal sense,* a public or private injury, when caused by a human being, presupposes the actionable invasion of some right. *City of St. Louis v. Klocker, supra,* 637 SW 2d at 176 ("no actionable invasion of rights occurs in

legally protected activity.") As previously discussed, Oregon law does not prohibit voluntary and properly performed termination of pregnancies. Moreover, this court has never held that such a termination of pregnancy constitutes a tort.[27] We believe it is only reasonable to conclude that what is lawful and nontortious is not a "public or private injury," as that language has meaning in the context of ORS 161.200(1)(a). Since termination of pregnancies are legal, nontortious activity under present Oregon law, their occurrence cannot be a "public or private injury." Because none of the terminations of pregnancies, which defendants sought to prevent in this case, is a "public or private injury" under ORS 161.200(1)(a), defendants are foreclosed from asserting the defense of choice of evils.

The decision of the Court of Appeals is affirmed. The judgment of the Multnomah County District Court is affirmed.

---

[27] Our decisions in *Libbee v. Permanente Clinic,* 268 Or 258, 518 P2d 636, 520 P2d 361 (1974), and *Mallison v. Pomeroy,* 205 Or 690, 291 P2d 225 (1955), providing causes of action for injury to or the death of a viable fetus, have not been extended to voluntary and properly performed terminations of pregnancies.