Argued and submitted June 26, 1991, affirmed February 12, 1992

DOWNTOWN WOMEN'S CENTER, P.C.,
Vertigo, Jacquelyn Burkart
and Jane Doe No. 1,
*Plaintiffs,*

*v.*

ADVOCATES FOR LIFE, INC.,
Operation Rescue, Inc., Andrew Burnett,
Linda Wolfe, James Miller, Dawn Stover,
Judy Hager and Catherine Ramey,
*Defendants.*

STATE ex rel DOWNTOWN WOMEN'S CENTER, P.C.,
Vertigo, Jacquelyn Burkart
and Jane Doe No. 1,
*Respondents,*

*v.*

ADVOCATES FOR LIFE, INC.,
Andrew Burnett, Dawn Stover
and Mark Hovee,
*Appellants.*

(A8901-00505; CA A61913)

826 P2d 637

Richard L. Stradley, Hillsboro, filed the brief for appellants.

Mary K. VanderWeele, Portland, argued the cause for respondents. With her on the brief were Stephen S. Walters and Stoel Rives Boley Jones & Grey, Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

Joseph, C. J., concurring.

Richardson, P. J., specially concurring.

---

* Joseph, C. J., *vice* Newman, J., deceased.

**DEITS, J.**

Defendants assign error to the trial court's refusal to allow a choice of evils defense to charges of contempt for their violation of a preliminary injunction. ORCP 78; ORS 33.010; ORS 33.020.[1] We affirm.

Defendants are Advocates for Life, Inc., and several individuals who had demonstrated at the Portland Medical Center Building (Center) in an effort to prevent women from obtaining abortions. Among other things, defendants repeatedly blocked the doors to Center to prevent patients from entering. Plaintiffs include tenants and the co-owner of Center. On February 22, 1989, the trial court issued a preliminary injunction restraining defendants from trespassing at Center and from harassing, intimidating or obstructing persons entering the building. Defendants violated the injunction on May 27, 1989. This contempt case arose in connection with that violation.[2]

Defendants asserted a choice of evils defense at the show cause hearing, but the court refused to consider it. The court explained that choice of evils was not a defense to contempt when the conduct was the same conduct that had been enjoined.[3] Defendants then made an offer of proof that included a doctor's testimony and several videos. Defendants explained that the evidence would show "that [they] were not

---

[1] In 1991, major revisions to the contempt proceedings statutes were adopted by the legislature. Or Laws 1991, ch 724. Those amendments are not applicable here, and we apply the statutes as they were before the amendments.

[2] Defendants had previously violated the order on March 18, 1989, and had been held in contempt. Then, the court imposed both civil and criminal penalties, which were partially suspended on the condition that defendants comply with the preliminary injunction.

[3] The trial court stated:

"This is a question of contempt of an order issued by the Court, and I don't think that the choice of evils defense is a criminal defense to a criminal statute that are defined as crimes in the Oregon Revised Statutes, but I don't think it is a defense to a — in a contempt proceeding to an order that was imposed by the Court.

"* * * * *

"* * * [T]he purpose of the order was to enjoin the conduct that is described therein. And you're in effect saying well, we disagree, that reasonable people could disagree, and we don't have to obey that order, and I think that's not what the choice of evils defense is all about.

"I would deny the defense. I will not consider it."

there to demonstrate, \* \* \* that they were there for one purpose only and that was to prevent a life from being taken." Defendants were held in contempt for willfully and deliberately violating the preliminary injunction. The individual defendants were each placed on six months probation and ordered to complete 40 hours of community service, pay a portion of plaintiffs' attorney fees and a fine of $300. Advocates for Life, Inc., was fined $2,000 and held jointly and severally liable for plaintiffs' attorney fees.

■ Defendants first argue that the penalties imposed were punishment for a completed contempt that can no longer be avoided by belated compliance and, therefore, this is a criminal contempt, rather than a civil contempt case. We agree. The difference between civil and criminal contempt under the law in effect at the time of this hearing was explained by the Supreme Court:

> "[In *civil* contempt a] penalty is 'imposed in order to compel compliance with an order and will end as soon as the respondent complies.' That is the situation often described as a case wherein the defendant carries the key to his own jail cell. On the other hand, *criminal* contempt is defined as a case wherein the penalty 'is imposed as punishment for a completed contempt that can no longer be avoided by belated compliance.' By their nature, penalties for criminal contempt are determinate and those for civil contempt are indeterminate." *Dwyer v. Dwyer*, 299 Or 108, 111, 698 P2d 957 (1985). (Emphasis in original; citations omitted.)

The sanction here was imposed as punishment for a completed contempt.

■ Defendants next argue that, because this case involves criminal contempt, the trial court erred in denying them the right to all of the defenses to which they would have been entitled to assert in a criminal case. The only defense that defendants sought to present was the choice of evils defense and, therefore, they are restricted to that defense on appeal. However, we conclude that a choice of evils defense could not have exonerated defendants as a matter of law and, therefore, the trial court did not err in not considering it. Accordingly, it is unnecessary for us to decide whether defendants had the right to present that defense in this proceeding.

ORS 161.200 specifies when the choice of evils defense is available:

"(1)    Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a)    That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b)    The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

"(2)    The necessity and justiciability of conduct under subsection (1) of this section shall not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder."

In *State v. Clowes*, 310 Or 686, 801 P2d 789 (1990), the Supreme Court considered a case involving similar facts. There, anti-abortionists were charged with criminal trespass after they had entered and blocked access to an abortion clinic in an effort to prevent patients from obtaining legal abortions. The Supreme Court held that the defendants were not entitled to the choice of evils defense under ORS 161.200. It stated that the choice of evils is available as a defense only if a defendant's "necessary" conduct is not inconsistent with other provisions of law:

"The Oregon legislature made a deliberate value decision when, in 1983, * * * it repealed the Oregon statutes that restricted a woman's right to terminate her pregnancy and enacted law that assumes abortions will be performed. Here, the actions that defendants sought to prevent were actions permitted under Oregon law. The interests that defendants sought to vindicate are not, therefore, consistent with that legislative decision. The present state of Oregon law is that a decision to terminate a pregnancy is a matter between a pregnant woman and her doctor. Hence, the defense of choice of evils, ORS 161.200, is unavailable to defendants in this case because it is, in the words of the statute, 'inconsistent * * * with some other provision of law.' " 310 Or at 698. (Emphasis supplied.)

The court went on to conclude that, because abortions are lawful and not tortious, they are not a "public or private injury." 310 Or at 698.

Likewise, here, defendants' choice of evils defense was based on their assertion that they were acting to prevent abortions from being performed. However, as in *Clowes*, the abortions that they sought to prevent were permitted under Oregon law and, therefore, their defense is inconsistent with another provision of law. Similarly, as in *Clowes*, defendants' conduct was not "necessary" as an emergency measure to avoid an imminent public or private injury. ORS 161.200(1)(a). We conclude that the court's refusal to consider defendants' choice of evils defense was not error, because the defense could not have benefitted them as a matter of law.

Affirmed.

**JOSEPH, C. J.,** concurring.

I agree with the lead opinion completely—and with the special concurrence in principle. However, given the issue framed by the parties, the lead opinion is the way that we *must* decide it.

**RICHARDSON, P. J.,** specially concurring.

I agree with the lead opinion's conclusion that, under *State v. Clowes*, 310 Or 686, 801 P2d 789 (1990), defendants' conduct could not be exonerated through the choice of evils defense if they had been charged with a substantive criminal offense for engaging in the conduct. Presumably, the reasoning in *Clowes* is equally applicable to injunction proceedings aimed at prohibiting the same conduct.

However, I think the case should be decided on a different basis. Even if the defense or some analog of it could have been asserted by defendants in the original proceeding that resulted in the issuance of the injunction, I would hold that the defense cannot be raised in this criminal contempt proceeding arising out of the violation of the injunction. *See In re Tamblyn*, 298 Or 620, 695 P2d 902 (1985); *Dept. of Rev. v. Carpet Warehouse*, 296 Or 400, 676 P2d 299 (1984); *State ex rel Mix v. Newland*, 277 Or 191, 560 P2d 255 (1977); *State ex rel. v. Lavery*, 31 Or 77, 49 P 852 (1897); *Pyle and Pyle*, 111

Or App 184, 826 P2d 640 (1992); *Renninger and Renninger*, 82 Or App 706, 730 P2d 37 (1986).

Both the judicial system and the parties who are protected by an injunction against a defendant's conduct are entitled to have the merits of enjoining the conduct decided only once and not be open to relitigation every time the defendant chooses to violate the order. As the court said in *State ex rel Hathaway v. Hart*, 300 Or 231, 240, 708 P2d 1137 (1985), the "essence of criminal contempt is the violation of the court's order, not the nature of the act that violated the order." Any effort to justify the act is completely immaterial to the question of whether the actor is in contempt of court for violating the order against committing it.[1]

---

[1] There may be cases where a defense is available that the defendant committed the enjoined act for reasons unrelated to the basis for the prohibition. For example, it might be a defense to a contempt charge that the defendant entered a burning building to rescue someone inside, notwithstanding an injunction against his entering the building that was issued because he had harassed its occupants. Here, however, defendants committed the prohibited act under the exact circumstances that were contemplated at the time that the injunction was issued.