Argued and submitted December 7, 2006, affirmed February 7, petition for review denied May 22, 2007 (342 Or 727)

COLUMBIA RIVER GORGE COMMISSION,
*Plaintiff-Respondent,*

*and*

STATE OF OREGON
and Friends of the Columbia Gorge,
*Intervenors-Respondents,*

*v.*

HOOD RIVER COUNTY,
Multnomah County and Wasco County,
*Defendants,*

*and*

Stephen L. STRUCK
and Paul D. Mansur,
*Defendants-Appellants.*

Hood River County Circuit Court
050051CC; A129652

152 P3d 997

Ross Day argued the cause for appellants. With him on the briefs was Oregonians in Action Legal Center.

Jeffrey B. Litwak argued the cause and filed the brief for respondent Columbia River Gorge Commission.

Denise G. Fjordbeck, Senior Assistant Attorney General, argued the cause for intervenor-respondent State of Oregon. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Nathan J. Baker argued the cause for intervenor-respondent Friends of the Columbia Gorge. With him on the brief were Friends of the Columbia Gorge, Inc., and Gary K. Kahn and Reeves, Kahn & Hennessy.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum,* Judges.

HASELTON, P. J.

---

* Rosenblum, J., *vice* Ceniceros, S. J.

## HASELTON, P. J.

2004 Ballot Measure 37, now codified at ORS 197.352, includes an exception for land use regulations "[t]o the extent the land use regulation is required to comply with federal law." ORS 197.352(3)(C). The question presented in this appeal is whether certain county land use ordinances that restrict development of properties within the Columbia River Gorge National Scenic Area fall within that exception. The trial court answered that question affirmatively, and, as amplified below, so do we. Accordingly, we affirm.

The facts material to our review are undisputed. In the November 2004 general election, Oregon voters approved Ballot Measure 37. Pursuant to that measure, if land use regulations restrict the use of private property and, consequently, diminish its value, just compensation must be paid to a property owner "if the land use regulation continues to be enforced against the property 180 days after the owner of the property makes written demand for compensation under this section to the public entity enacting or enforcing the land use regulation." ORS 197.352(4). However—and critically to this dispute—the statute's "just compensation" requirements "shall not apply to land use regulations * * * [t]o the extent the land use regulation is required to comply with federal law." ORS 197.352(3)(C).

After Measure 37 became law, many Oregon property owners filed claims with governmental bodies seeking compensation based on alleged diminution of their property values from the application of land use regulations or, alternatively, waiver of the application of those regulations. Among those landowners were defendants Stephen Struck and Paul Mansur, who each own property in Hood River County, within the Columbia River Gorge National Scenic Area, that they wish to divide and develop for residential construction. In 2005, each of those defendants filed a Measure 37 claim in Hood River County. Those claims sought compensation because county land use ordinances, which were enacted to comport with and implement requirements of the management plan adopted by plaintiff Columbia River Gorge

Commission (Commission), restricted their ability to sub-
divide and develop their properties.

In April 2005, plaintiff Commission initiated this
action against defendants Hood River County, Multnomah
County, and Wasco County, as well as the defendant land-
owners, Struck and Mansur. The Commission sought a dec-
laration that Measure 37 does not apply to property affected
by the defendant counties' land use ordinances implementing
the Columbia River Gorge National Scenic Area Act (Scenic
Area Act), 16 USC §§ 544 - 544p, and adopted pursuant to the
Commission's management plan that was promulgated pur-
suant to the Scenic Area Act.[1] In particular, the Commission
alleged in part that application of Measure 37's "just compen-
sation" or waiver provisions to local land use ordinances
promulgated to comport with the management plan would
conflict with and violate provisions of the Scenic Area Act and
the corollary Columbia River Gorge Compact because:

> "Neither the Act nor the Compact requires a county to pay
> compensation to landowners for enacting and/or enforcing
> land use regulations that are required by the Act or Com-
> pact, and neither the Act nor the Compact permits a county
> to waive application of land use regulations that are
> required by the Act or Compact."

The State of Oregon and the Friends of the Columbia Gorge
subsequently intervened as additional plaintiffs.

Plaintiff and plaintiff-intervenors sought summary
judgment with respect to the proper construction and appli-
cation of Measure 37's "federal law" exception. The indi-
vidual defendants opposed that motion[2] but specifically
acknowledged that there were no factual issues to be resolved
and that the case could be determined as a matter of law on
summary judgment. The trial court granted summary judg-
ment for plaintiff and plaintiff-intervenors. The court
concluded:

---

[1] We describe in detail below the content of the pertinent provisions of the
Scenic Area Act and the relationship between the management plan and the imple-
menting local land use ordinances. *See* 210 Or App at 696-99.

[2] The counties did not oppose summary judgment and are not parties on
appeal. Accordingly, all references to "defendants" in the balance of this opinion
are to Struck and Mansur only.

"If the management plan requires the counties to adopt land use ordinances, then the exception to Measure 37 applies. * * * The management plan is federally mandated. If the management plan is federally mandated, and if the management plan requires the enactment of land use ordinances, then Measure 37, on its face, allows an exception.

"* * * * *

"I disagree [with defendants] that those nine standards [set out in 16 USC section 544d(d)(1) to (9)] are all that can be in the management plan. I disagree that Congress contemplated that those nine standards would be the entirety of the management plan without going through the Act. I think the Act is replete with direction to the Gorge Commission to do studies, to take[ ] inventories, and then to create a management [plan] that addresses those nine standards in light of the studies that they've done. Given that, I think Congress envisions something well beyond those nine standards."

Defendants appeal, raising two arguments. *First,* they argue that the trial court applied the wrong standard when it granted summary judgment, because it failed to draw all reasonable inferences in their favor. ORCP 47 C; *see Wilson v. Smurfit Newsprint Corp.*, 197 Or App 648, 650, 107 P3d 61, *rev dismissed,* 339 Or 407 (2005) ("summary judgment is appropriate if the evidence in the record and all reasonable inferences that may be drawn from it, viewed in the light most favorable to the nonmoving party, disclose no issue of material fact, and the moving party is entitled to judgment as a matter of law"). *Second,* defendants argue that the court erred in concluding that the ordinances at issue were "required to comply with federal law," ORS 197.352(3)(C), because the ordinances implement the rules of the Commission—which, defendants assert, is a state, rather than a federal, agency. We address, and reject, each contention in turn.

■    We turn to defendants' first, procedural argument. Defendants argue that the trial court improperly determined, *as a matter of fact,* that Congress did not intend that the nine standards in 16 USC section 544d(d)(1) to (9)[3]

---

[3] That provision is set out below. *See* 210 Or App at 696-99.

"would be the entirety of the management plan." From the premise that the trial court's determination in that regard was "factual," defendants argue that the question of congressional intent represented a disputed issue of material "fact" and that, on summary judgment, the trial court was required to draw all inferences in that regard favorably to defendants, as the nonmoving parties.

Defendants' position depends on an erroneous premise. Defendants' assumption that judicial determination of legislative intent implicates issues of material fact for purposes of ORCP 47 C confuses adjudicative or historical facts with legislative facts. In *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 558, 871 P2d 106 (1994), the court explained the distinction:

> "[I]n determining the meaning of a term in the constitution, or in analyzing the constitutionality of a law, the court may take judicial notice of certain facts. When a court does so, however, the court is taking judicial notice of legislative facts, which are facts utilized in determining what the law—statutory, decisional, or constitutional—is or should be. *See State v. Clowes*, 310 Or 686, 692 n 7, 801 P2d 789 (1990) (defining and discussing legislative facts); *Chartrand v. Coos Bay Tavern*, 298 Or 689, 693, 696 P2d 513 (1985) ('Legislative facts * * * are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body.' (internal quotation marks omitted)). Judicial notice of legislative facts is not subject to the Oregon Evidence Code, *State v. Clowes, supra*, 310 Or at 692 n 7, and parties are not entitled as a matter of right to present evidence to demonstrate such facts.
>
> "Simply put, an ambiguity in the constitution or in a statute does not, by itself, create an issue of fact, let alone one that must be resolved by the presentation of evidence."

(Footnote omitted; ellipsis in original.) *See also State v. Schwartz*, 173 Or App 301, 309, 21 P3d 1128, *rev den*, 333 Or 162 (2001) ("Legislative facts are used to determine what the law is or should be, not to arrive at findings about the events relevant to the particular case.").

The relevant summary judgment "record" in this case consists of law rather than historical fact. That is, the relevant materials here were, and are, the various state and federal laws and regulations surrounding this dispute.[4] Indeed, as noted, all of the parties, including defendants, informed the trial court that there were no factual issues to be resolved and that the case could be decided as a matter of law on summary judgment. Consequently, their arguments focused exclusively on the proper legal interplay between the Scenic Area Act and various implementing measures on one hand and Measure 37 on the other. The only issues were legal, not factual.[5]

■ We proceed to the second, substantive issue: Do county land use regulations that restrict the development of property in the Columbia River Gorge National Scenic Area fall within Measure 37's exception for regulations that are "required to comply with federal law"? ORS 197.352(3)(C). We begin, necessarily, with an overview of the laws that underlie this dispute.

Congress created the Scenic Area Act in 1986. The purposes of the federal Act were, and are,

"(1)   to establish a national scenic area to protect and provide for the enhancement of the scenic, cultural, recreational, and natural resources of the Columbia River Gorge; and

"(2)   to protect and support the economy of the Columbia River Gorge area by encouraging growth to occur in existing urban areas and by allowing future economic development in a manner that is consistent with paragraph (1)."

16 USC § 544a.

As part of the Scenic Area Act, Congress authorized Oregon and Washington to "establish by way of an interstate agreement a regional agency known as the Columbia River

---

[4] The only other materials in the record on summary judgment are copies of defendants' Measure 37 claims, from which no inferences need be drawn in order to resolve the issue presented here.

[5] We note, moreover, that, even on appeal, defendants have not identified any disputed issues of material historical fact.

Gorge Commission." 16 USC § 544c(a)(1)(A). The Commission is to carry out its functions in accordance with the interstate agreement and the Scenic Area Act, but "shall not be considered an agency or instrumentality of the United States for the purpose of any Federal law." *Id.* The Scenic Area Act further instructs the Commission to conduct studies, develop land use designations, and then adopt a management plan. 16 USC § 544d(a), (b), (c).

The Scenic Area Act specifies the following standards for the management plan and county ordinances enacted pursuant to that plan:

"The management plan and all land use ordinances and interim guidelines adopted pursuant to sections 544 to 544p of this title shall include provisions to -

"(1)   protect and enhance agricultural lands for agricultural uses and to allow, but not require, conversion of agricultural lands to open space, recreation development or forest lands;

"(2)   protect and enhance forest lands for forest uses and to allow, but not require, conversion of forest lands to agricultural lands, recreation development or open spaces;

"(3)   protect and enhance open spaces;

"(4)   protect and enhance public and private recreation resources and educational and interpretive facilities and opportunities, in accordance with the recreation assessment adopted pursuant to subsection (a) of this section;

"(5)   prohibit major development actions in special management areas, except for partitions or short plats which the Secretary determines are desirable to facilitate land acquisitions pursuant to sections 544 to 544p of this title;

"(6)   prohibit industrial development in the scenic area outside urban areas;

"(7)   require that commercial development outside urban areas take place without adversely affecting the scenic, cultural, recreation, or natural resources of the scenic area;

"(8)   require that residential development outside urban areas take place without adversely affecting the

scenic, cultural, recreation, and natural resources of the scenic area; and

"(9) require that the exploration, development and production of mineral resources, and the reclamation of lands thereafter, take place without adversely affecting the scenic, cultural, recreation, and natural resources of the scenic area."

16 USC § 544d(d). After development of the management plan, the Commission is required to submit the plan to the Secretary of Agriculture for a determination of whether it "is consistent with the standards established in this section and the purposes of sections 544 to 544p of this title." 16 USC § 544d(f).

The Scenic Area Act further provides that, after the Commission has developed the management plan, Hood River County, Multnomah County, and Wasco County in Oregon, as well as Clark, Klickitat, and Skamania counties in Washington, are to adopt land use ordinances "consistent with the management plan." 16 USC § 544e(b)(1).[6]

Under the Act, after the counties adopt such ordinances, the Commission is to make a "tentative determination" as to whether the ordinances comply with the management plan. 16 USC § 544f(i). If the Commission determines that the county ordinances comply with the management plan, it is to transmit the ordinances to the Secretary of Agriculture, who then determines whether the ordinances are consistent with the management plan. 16 USC § 544f(j). If the counties fail to enact ordinances that comply with the management plan, either through inaction or by enacting ordinances that do not comply with the management plan, then the Commission itself may enact ordinances to "assur[e] that the use of such land is consistent with the management plan." 16 USC § 544f(l). Finally, the Scenic Area Act authorizes the Commission to initiate civil actions "to enforce sections 544 to 544p of this title," and provides for state court jurisdiction over such actions. 16 USC § 544m(b)(1), (6)(B).

---

[6] The Scenic Area Act makes further provisions for the Commission to take steps to enact ordinances should the counties fail to do so. 16 USC § 544e(c). Those provisions are not at issue in the present case.

In 1987, Oregon and Washington entered into the agreement authorized by the Scenic Area Act. ORS 196.150; RCW 43.97.105. Those statutes, referred to as the "Columbia River Gorge Compact," established the Commission and gave it authority "to perform all functions and responsibilities in accordance with the provisions of this compact and of the Columbia River Gorge National Scenic Area Act." The Commission completed the Columbia River Gorge National Scenic Area Management Plan in the early 1990s. Each of the three Oregon counties included in the Columbia Gorge National Scenic Area subsequently adopted ordinances that were determined to be consistent with the Commission's management plan. As pertinent here, those ordinances restricted the subdivision and residential development of certain properties in the Columbia Gorge National Scenic Area, including properties owned by defendants.[7]

Against that statutory and regulatory backdrop, we return to the construction of Measure 37's "federal law" exception and its proper application in this case. Again, the critical language is: "To the extent the land use regulation is required to comply with federal law." ORS 197.352(3)(C). The legal inquiry is straightforward: Are the county ordinances adopted pursuant to provisions of the Columbia River Gorge National Scenic Area Management Plan and the Scenic Area Act, as described above, ordinances that are "required to comply with federal law"?

Defendants argue that the Commission is not a federal agency and that the county ordinances were enacted pursuant to the directives of the Commission's management plan, and not pursuant to the Scenic Area Act itself. Proceeding from those premises, defendants reason, in turn, that (a) the Commission is an agency of the State of Oregon; (b) its management plan is not federal law; and (c) the counties' ordinances enacted pursuant to that management plan are not ordinances "required to comply with federal law." Defendants further assert that many of the substantive provisions of the management plan—and the county ordinances that

---

[7] After the enactment of Measure 37, each of the defendant counties ultimately did, by ordinance or resolution, expressly exempt from Measure 37 claims any properties in the Columbia Gorge National Scenic Area.

mirror those provisions in terms of land use designations and limitations on use—are not specifically prescribed by the Scenic Area Act itself. Thus, defendants conclude, only the nine general, precatory standards listed in 16 USC section 544d(d)[8]—and not the particular restrictions included in the Commission's management plan and the counties' ordinances—can be said to be "required by federal law."

Plaintiff[9] responds, first, that the interstate compact that created the Commission has the status of a federal law, noting that "where Congress has authorized the States to enter into a cooperative agreement and the subject matter of that agreement is an appropriate subject for congressional legislation, Congress' consent transforms the States' agreement into federal law under the Compact Clause." *Cuyler v. Adams*, 449 US 433, 440, 101 S Ct 703, 66 L Ed 2d 641 (1981).[10] Second, plaintiff reasons, because the compact itself is federal law, and the compact created the Commission that adopted the management plan pursuant to which the county ordinances were adopted, the ordinances were "required to comply with federal law." *See generally Klickitat County v. State*, 71 Wash App 760, 767, 862 P2d 629 (1993) (because the compact was an instrument of federal law, the "Commission's land management plan and the act's provisions relative to the plan are federally mandated").

As explained below, we conclude that plaintiff is correct. As an initial matter, we disagree with defendants that an interstate commission created with the consent of Congress is a agency of the State of Oregon. Defendants reason that the Commission can only be either a federal entity or a state entity—and that, because the Scenic Area Act specifies that the Commission is not a federal agency, *see* 16 USC § 544c(a)(1)(A), it must be a state agency. In defendants' view, because the Commission would not exist but for Oregon's enactment of a state statute, ORS 196.150, the

---

[8] *See* 210 Or App at 697-98.

[9] Plaintiff and plaintiff-intervenors make essentially the same arguments, so we refer, for the sake of simplicity, to plaintiff's arguments.

[10] Article I, section 10, of the United States Constitution provides in part that "[n]o State shall, without the Consent of Congress, * * * enter into any Agreement or Compact with another State[.]"

Commission is a creature of state law and, thus, a state agency.

Contrary to defendants' understanding, ORS 196.150 does not purport to create a state agency. Rather, it ratifies Oregon's compact with Washington to establish "a *regional* agency known as the Columbia River Gorge Commission" to carry out the provisions of the compact and of the Scenic Area Act. ORS 196.150, Art Ia (emphasis added). Regional agencies created by interstate compacts are generally recognized to be neither categorically state nor federal in nature; instead, they are hybrids. *See Murray v. State of Oregon*, 203 Or App 377, 379, 124 P3d 1261 (2005) ("The commission is a *bistate entity* made up of representatives of the states of Oregon and Washington." (emphasis added)); *cf. Hess v. Port Authority Trans-Hudson*, 513 US 30, 40, 115 S Ct 394, 130 L Ed 2d 245 (1994) ("The States, as separate sovereigns, are the constituent elements of the Union. Bistate entities, in contrast, typically are creations of three discrete sovereigns: two States and the Federal Government."). Thus, to the extent that defendants' arguments rest on the premise that the Commission itself is a "state agency," we reject that premise.

Further, we agree with plaintiff that the interstate compact between Oregon and Washington that created the Commission has the force of federal law. *See Cuyler*, 449 US at 440. That compact specifically authorizes the Commission to disapprove county land use ordinances that are inconsistent with the management plan and to enact land use ordinances should counties fail to enact ordinances consistent with the management plan. ORS 196.150, Art Ia.

Finally, the Scenic Area Act itself clearly mandates that county land use ordinances of the sort at issue here must comply with federal law. As noted, defendants insist that the Scenic Area Act *requires* only that the nine standards set forth in section 544d(d) be included in the management plan and, ultimately, in county ordinances implementing the plan. That is, in defendants' view, a management plan or ordinances that consisted *solely* of those nine standards, literally, would fully satisfy the requirements of federal law—and any additional provisions amplifying and implementing those

general, precatory standards are not "required" by federal law. Thus, defendants reason, the specific restrictions on subdividing parcels of land for residential development in the Columbia River Gorge National Scenic Area are not "required to comply with federal law," as that phrase is used in Measure 37.

We disagree. Defendants' view of what the Scenic Area Act "requires" with respect to promulgation of the management plan is artificially and implausibly crabbed; that view cannot be reconciled with the federal Act's comprehensive design and operation. Section 544d(c) specifies that the management plan must: (a) be based on the results of a resource inventory to be carried out pursuant to the Act, (b) include land use designations developed pursuant to the Act,[11] (c) "be consistent with the standards established in subsection (d) of this section," *and* (d) include "guidelines for the adoption of land use ordinances for lands within the scenic area." 16 USC § 544d(c)(1), (2), (3), (5). Read together, those subsections direct that the management plan is to establish guidelines for actual land use ordinances that govern the manner in which specific lands may be used, based on an evaluative assessment and application of the nine "goal"-like standards in section 544d(d) to the lands in the Scenic Area. In sum, the Scenic Area Act, when correctly understood as comprehensive land use legislation, *requires* a degree of detail and rigor in the management plan and implementing ordinances far transcending the precatory standards set out in section 544d(d).

Finally, and emphatically, the Scenic Area Act provides for a degree of federal oversight that belies defendants' assertion that the county ordinances in question are not "required to comply with federal law." As noted above, *see* 210 Or App 698-99, the Secretary of Agriculture is charged with the responsibility of determining whether the Commission's management plan containing specific guidelines for the adoption of local land use ordinances is consistent with the standards and purposes of the Scenic Area Act. Moreover, the

_____

[11] The Scenic Area Act requires that the land use designations specifically "designate areas used or suitable for residential development, taking into account the physical characteristics of the areas in question and their geographic proximity to transportation and commercial facilities and other amenities." 16 USC § 544d(b)(6).

Secretary must review implementing local ordinances to ensure that they are consistent with the Commission's management plan. *See* 16 USC §§ 544d(f), 544f(j).

We thus conclude that the land use ordinances enacted by Wasco, Hood River, and Multnomah counties in accordance with, and to implement, the Commission's management plan are land use regulations that are "required to comply with federal law" for purposes of ORS 197.352(3)(C).

Affirmed.